UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SERGIO QUINTERO MEZA,

Petitioner,

-against-

KENNETH GENALO, *et al.*,

Respondents.

26-CV-7214 (VSB)

**ORDER**

VERNON S. BRODERICK, United States District Judge:

On September 17, 2026, I held a conference on Petitioner's Habeas Petition ("Hearing"). (Doc. 21 ("Hearing Tr.") at 1-2.) On that same date, I signed an order requesting various supplemental filings in this matter. (Doc. 19.) On September 21, 2026, the Government filed the first of these, which was a letter confirming that if I grant the habeas petition that the voluntary departure order signed by the Immigration Judge will remain in place, (Doc. 20 at 1), and that Immigrations and Customs Enforcement ("ICE") "could exercise its discretion to assist Petitioner with travel arrangements back to his home country" if "he is unable to purchase or procure his own ticket," (*id.* at 2). My order also required that the Government transmit any body-worn camera footage as soon as practicable, (Doc. 19), that the attorneys in the immigration proceeding submit declarations regarding the voluntariness of Petitioner's consent to voluntary departure, among other things, by Wednesday, September 23, 2026, (*id.*), and that Deportation Officer Brenden Cuni, who had already submitted a declaration in this matter, submit a supplemental declaration regarding Petitioner's initial arrest, by Friday, September 25, 2026, (*id.*).

Petitioner was detained on August 22, 2026 at approximately 3:12 p.m. ET, (Doc. 7-1), after agents from ICE encountered Petitioner at 1881 Forest Avenue, Staten Island, New York, at approximately 2:22 p.m. ET "while conducting surveillance at 367 Lake Ave[nue], Staten Island, New York," having been "tasked with locating and arresting" one Juan Nieto Nieto, (*id.*).[1] The Government asserted that "[t]he ICE Officers approached Petitioner and [] other individuals for the purpose of gaining information on their intended target," (Doc. 8 ¶ 6), and that the officers "developed reasonable suspicion that Petitioner may be inadmissible and present in the United States in violation of the Immigration and Nationality Act," (*id.*). However, at the hearing, the Government did not have any further explanation concerning why the officers believed that Petitioner would have any information on Mr. Nieto Nieto or how reasonable suspicion was developed beyond the fact that Petitioner was speaking Spanish and purportedly said he was from Mexico. (Hearing Tr. 20:21-24:9 ("I don't have anything to expand on the reason why they approached these gentlemen in front of an address that was not the one that they were surveilling.").) The body-worn camera footage relating to the incident was transmitted to my chambers on Wednesday, September 23, 2026.

During the Hearing, the Government indicated that when Petitioner was arrested, there was no Notice to Appear ("NTA") that had been issued against him. (Hearing Tr. 25:13-16 ("That was done a few hours later when he was processed at 26 Federal Plaza.").) Indeed, the

[1] I take judicial notice of the fact that the "surveillance" location and the location where Petitioner was detained are approximately 0.1 miles or two blocks from one another and there does not appear to be a direct line of sight between the two locations. *See Johnson v. N.Y.S. Div. of Parole*, No. 24-CV-0167, 2025 WL 4086755, at *5 (N.D.N.Y. Sept. 25, 2025) ("[C]ourts have regularly taken judicial notice of images on Google Street View." (collecting cases)), *report and recommendation adopted*, 2026 WL 228423 (N.D.N.Y. Jan. 27, 2026).

NTA bears a time stamp in connection with the signature of Deportation Officer Brendan C. Cuni of 21:39.50, or approximately 8:39 p.m. ET, more than five hours after Petitioner was detained. (Doc. 7-3 at 2.)

Section 1226(a) states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). "The NTA begins the removal process, and at that time or after its issuance, the [g]overnment can then effectuate [an individual's] arrest, and, if necessary, detention, until removal proceedings are completed." *Gopie v. Lyons*, No. 25-CV-5229, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025) ("The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 . . . requires the government to serve 'a notice to appear' on individuals it wishes to remove from this country." (quoting *Niz-Chavez v. Garland*, 593 U.S. 155, 157–58 (2021))). This means that an "I-200 cannot be used to effectuate an arrest *before* an NTA has been issued." *Yeleshev v. Larocco*, No. 26-CV-2294, 2026 WL 1353806, at *2 (E.D.N.Y. May 14, 2026) (emphasis in original) (collecting cases). The Second Circuit has not explicitly addressed this issue, but almost every District Court that has ruled on this issue has concluded that the notice to appear must be entered prior to an I-200 warrant in order for the warrant to take effect. *See, e.g.*, *Okeke v. Maldonado*, No. 26-CV-2714, 2026 WL 2056904, at *4–5 (E.D.N.Y. July 16, 2026) (concluding that ICE had no authority to arrest the petitioner where ICE issued and served the NTA eleven hours after arresting him pursuant to a Form I-200 warrant); *Yeleshev*, 2026 WL 1353806, at *2 (similar); *Parada Cruz v. Mullin*, --- F. Supp. 3d ----, Nos. 26-CV-1110, 2026 WL 1027441, at *10–12 (E.D.N.Y. Apr. 16, 2026) (collecting cases in support of requirement that valid I-200 warrant be issued before arrest); *Aparicio v. Genalo*, No.

26-CV-1411, 2026 WL 698872, at *4–5 (E.D.N.Y. Mar. 12, 2026) (concluding that the petitioner's procedural due process rights were violated where ICE arrested Petitioner pursuant to a Form I-200 warrant, brought him to an intake facility, then issued the NTA); *Meza v. Francis*, No. 26-CV-2722, 2026 WL 1734903, at *2–3 (E.D.N.Y. June 16, 2026) ("But even accepting that the time frame between the issuance of the arrest warrant and the issuance of the NTA was relatively short, there is no leeway; if ICE wants to use a warrant, it must have a valid NTA in place." (internal quotation marks omitted and alterations adopted)); *E.T.G. v. Genalo*, No. 26-CV-4274, 2026 WL 2140351, at *4 (E.D.N.Y. July 25, 2026) ("ICE did not issue a valid NTA for E.T.G. until April 28, 2026, *after* he was arrested. . . . [t]hat post-arrest NTA cannot retroactively validate E.T.G.'s illegal arrest. (emphasis in original)). *But see Ramirez v. Genalo*, No. 26-CV-3229, 2026 WL 1815771, at *4 (E.D.N.Y. June 24, 2026) ("[T]he record reflects that the NTA was served on Petitioner at the time he was processed in connection with the I-200. There is no defect in that process."). I agree with the majority of the judges to broach this issue that a notice to appear must precede the issuance of an I-200 warrant in order for the warrant to take effect. *See V.P.R v. The Sheriff of Freeborn Cnty., Minn.*, No. 26-CV-3047, 2026 WL 2546265, at *2 (D. Minn. Aug. 28, 2026) ("[T]his Court is otherwise not persuaded by *Ramirez*. Nothing in the regulations excepts documents issued same-day from proper sequencing.").

Here, the evidence indicates that the NTA was not issued prior to Petitioner's detention, arrest or the issuance of an I-200, which alone is sufficient to render the arrest improper and justify Petitioner's release. *Okeke*, 2026 WL 2056904, at *4 (granting habeas because "[t]here is no dispute here that Respondents failed to issue an NTA before arresting Petitioner pursuant to a

Form I-200 Warrant."); *see also Parada Cruz*, 2026 WL 1027441, at *2 (same).[2] During the Hearing, Counsel for the Government confirmed that the NTA was issued after Petitioner was already detained, (Hearing Tr. 25:13-16; *see also* Doc. 7-3), which does not comport with due process, *Parada Cruz*, 2026 WL 1027441, at *3 ("Using an after-the-fact warrant to justify a prior arrest is constitutionally problematic. It also is statutorily prohibited under the INA."); *see also J.G.G. v. Genalo*, No. 26-CV-5027, 2026 WL 2547110, at *3 (E.D.N.Y. Aug. 28, 2026) ("Courts in this district have concluded that a Form I-200 cannot be used to effectuate an arrest before an NTA has been issued." (internal quotation marks omitted and alterations adopted) (collecting cases)). The declaration filed by Respondents acknowledges that "[d]uring processing, ICE Officers served Petitioner with a Notice to Appear," after he had already been detained. (Doc. 8.) This is a "dispositive and independent basis to grant the writ." *Gopie*, 2025 WL 3167130, at *1; *see also Izaquirre v. Blanche*, No. 26-CV-2911, 2026 WL 2023200, at *14 (E.D.N.Y. July 13, 2026) (ordering release where "[r]espondents were not authorized to arrest [p]etitioner in the first place"); *Meza*, 2026 WL 1734903, at *2 (same).

Therefore, Petitioner's writ of habeas corpus is GRANTED, and ICE is direct to release Petitioner. The Government is directed to inform Petitioner's next friend as to the expected time and place of Petitioner's release and shall file a status letter to update me about Petitioner's status by September 28, 2026.

---

[2] Warrantless arrests are only permitted in some circumstances when ICE "has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation *and* is likely to escape before a warrant can be obtained for his arrest. *See Lopez Romero v. Genalo*, No. 26-CV-6184. 2026 WL 2240720, at *2 (S.D.N.Y. Aug. 3, 2026) (emphasis in original). There is no indication or argument by the Government that this test was met here. (*But see* Doc. 9.)

I retain jurisdiction to ensure that the Government complies with my order, and with its stated position regarding Petitioner's voluntary departure, (*see* Doc. 20). If the Government fails to comply with my order, Petitioner may bring a motion to enforce this judgment. If Petitioner has difficulty obtaining travel arrangements himself and would like ICE to exercise its discretion to assist with his travel to Mexico, should he choose not to challenge the voluntary departure order, he may also file an application to me.

Dated: September 24, 2026
New York, New York

Vernon Broderick

Vernon S. Broderick
United States District Judge